OTAK NEVADA, LLC, PETITIONER, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE DOUG SMITH, DISTRICT JUDGE, RESPONDENTS, AND PACIFICAP CONSTRUCTION SERVICES, LLC; PACIFICAP PROPERTIES GROUP, LLC; PACIFICAP HOLDINGS XXIX, LLC; CHAD I. RENNAKER; JASON Q. RENNAKER; CHEYENNE APARTMENTS PPG, LP; AND CHRISTOPHER WATKINS, REAL PARTIES IN INTEREST.

No. 59050

November 7, 2013 312 P.3d 491

*Morris Polich & Purdy, LLP*, and *Nicholas M. Wieczorek*, Las Vegas, for Petitioner Otak Nevada, LLC.

*Bauman Loewe Witt & Maxwell, PLLC*, and *Whitney C. Wilcher*, Las Vegas, for Real Parties in Interest Chad I. Rennaker and Jason Q. Rennaker.

*Christiansen Law Offices* and *Peter S. Christiansen, Richard E. Tanasi*, and *Kristina Weller*, Las Vegas; *Law Office of Daniel S. Simon* and *Daniel S. Simon*, Las Vegas; *Lewis & Roca, LLP*, and *Daniel F. Polsenberg* and *Joel D. Henriod*, Las Vegas, for Real Party in Interest Christopher Watkins.

*Lewis Brisbois Bisgaard & Smith, LLP*, and *Josh C. Aicklen, Mark J. Brown*, and *Stephanie J. Smith*, Las Vegas; *Sterling Law, LLC*, and *Beau Sterling*, Las Vegas, for Real Parties in Interest Cheyenne Apartments PPG, LP; Pacificap Holdings XXIX, LLC; Pacificap Properties Group, LLC; Chad I. Rennaker; and Jason Q. Rennaker.

*Thagard, Reiss & Brown, LLP*, and *Thomas Friedman*, Las Vegas, for Real Party in Interest Pacificap Construction Services, LLC.

Before the Court EN BANC.

## OPINION

By the Court, HARDESTY, J.:

Under NRS 17.245(1)(b), a defendant who enters into "a release or a covenant not to sue or not to enforce judgment . . . in good faith" is "discharge[d] . . . from all liability for contribution and for equitable indemnity to any other [defendant]." The questions we are asked to decide in this original writ proceeding are: (1) If a defendant settles in good faith, does NRS 17.245(1)(b) bar "de facto" claims for contribution and/or equitable indemnity?; and (2) Are the contractor's third-party claims in this matter considered "de facto" contribution and/or equitable indemnity claims that may be barred under NRS 17.245(1)(b)? We conclude that, regardless of the claim's title, NRS 17.245(1)(b) bars all claims that seek contribution and/or equitable indemnity when the settlement is determined to be in good faith. Because we conclude that the contractor's remaining third-party claims in this matter are "de facto" contribution claims, and are thus barred by NRS 17.245(1)(b), we grant this petition for writ of mandamus.

## FACTS AND PROCEDURAL HISTORY

This petition arises from underlying litigation concerning a fatal automobile accident that occurred at a construction site in Las Vegas, Nevada. Real parties in interest Cheyenne Apartments PPG, LP; Pacificap Holdings XXIX, LCC; Pacificap Properties Group, LLC; Chad I. Rennaker; and Jason Q. Rennaker (collectively, P&R) are the owners and developers of the site; and real party in interest Pacificap Construction Services, LLC (PCS), was the general contractor.[1] Petitioner Otak Nevada, LLC, an architecture firm, entered into an agreement with P&R to design a multifamily housing project. Otak hired subcontractor Orion Engineering and Surveying to design and implement necessary off-site road construction. Pursuant to the agreement, Orion was to design four traffic medians to be installed in the intersection adjoining the construction site and to replace traffic markers to alter the flow of traffic. However, one median was not installed, and the traffic markers were not replaced. These omissions allegedly caused the fatal automobile accident.

Following the accident, the plaintiffs and/or their estates filed complaints against, among others, PCS and P&R. After the plaintiffs amended their complaints to add Otak as a defendant, Otak and the plaintiffs reached a settlement agreement in which the plaintiffs agreed to dismiss all of their claims against Otak in exchange for $45,000, and assignment of Otak's experts. Otak filed in the district court a motion for approval of good-faith settlement based on NRS 17.245. The district court denied the motion because it found that a $45,000 settlement was not a fair settlement amount for the plaintiffs, and thus, was not in good faith. After additional settlement negotiations, Otak and the plaintiffs agreed to a new settlement in the amount of $210,000, plus the assignment of Otak's experts. Otak filed an amended motion for good-faith settlement, which was opposed by PCS and P&R on the basis that the proposed amount of the settlement was far less than Otak's potential liability or its insurance policy limits and would unfairly shift Otak's liability to the remaining defendants. The district court granted the motion.

After determining that Otak's settlement with the plaintiffs was made in good faith, the district court granted P&R leave to file a third-party complaint against Otak.[2] P&R's third-party complaint

---

[1]PCS has not appeared in this writ proceeding.

[2]At the time the district court granted P&R's motion to file a third-party complaint against Otak, a writ petition challenging, on other grounds, PCS's third-party complaint and P&R's cross-claims against Otak was already pending before this court. This court subsequently concluded that those pleadings were void ab initio. *See Otak Nev., L.L.C. v. Eighth Judicial Dist. Court (Otak I)*, 127 Nev. 593, 599, 260 P.3d 408, 412 (2011). As a result of that opinion,

against Otak asserted claims for breach of contract, express indemnity, express contribution, breach of the covenant of good faith and fair dealing, professional negligence, and punitive damages.[3] Otak moved to dismiss the complaint on the ground that the claims were all barred by NRS 17.245. It argued that NRS 17.245 bars all claims that are "de facto" contribution and/or equitable indemnity claims. Although the district court declined to dismiss P&R's third-party complaint in its entirety, it did dismiss P&R's claim for professional negligence. This petition for a writ of mandamus followed.

## DISCUSSION

A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion. NRS 34.160; *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). Whether a petition for extraordinary relief will be considered is purely discretionary with this court. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). Petitioner bears "the burden of demonstrating that extraordinary relief is warranted." *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 228, 88 P.3d 840, 844 (2004).

Mandamus is not appropriate if the petitioner has "a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170. Generally, an adequate legal remedy is afforded through the right to appeal. *Pan*, 120 Nev. at 224, 88 P.3d at 841. Thus, we " ' 'will not entertain a writ petition challenging the denial of a motion to dismiss [unless] . . . the issue is not fact-bound and involves an unsettled and potentially significant, recurring question of law.' '"[4] *MountainView Hosp., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. 180, 185, 273 P.3d 861, 864-65 (2012) (second alteration in original) (quoting *Buckwalter v. Eighth Judicial Dist. Court*, 126 Nev. 200, 201, 234 P.3d 920, 921 (2010)). Here,

---

the district court dismissed PCS's third-party complaint and denied P&R leave to amend its answer to assert a cross-claim against Otak. PCS has not filed any other claims against Otak.

[3]P&R's third-party complaint alleges claims against petitioner Otak, as well as five other third-party defendants. Because the only claims challenged in this petition are the third-party claims brought against petitioner Otak, we do not address the third-party claims brought by P&R against the five other third-party defendants.

[4]Although Otak's motion was alternatively one for summary judgment, Otak's petition only challenges the district court's refusal to dismiss all of P&R's third-party claims against Otak, not its denial of Otak's motion for summary judgment. Accordingly, we treat Otak's motion as a motion to dismiss.

whether P&R's remaining third-party claims should be dismissed depends on whether NRS 17.245 bars "de facto" claims for contribution and/or equitable indemnity, and whether P&R's claims constitute "de facto" claims. Because this issue of law is a matter of first impression and may be dispositive of the case, we exercise our discretion to entertain this writ petition.[5]

*The district court did not abuse its discretion by granting Otak's motion for approval of good-faith settlement*

Because our determination of whether P&R's third-party claims are barred by NRS 17.245 is contingent upon whether Otak settled in good faith with the plaintiffs in the underlying action, we first examine the district court's determination of good faith. We review the district court's determination of good faith for an abuse of discretion. *Velsicol Chem. Corp. v. Davidson*, 107 Nev. 356, 357, 811 P.2d 561, 561 (1991). An abuse of discretion occurs when the district court's decision is not supported by substantial evidence. *Finkel v. Cashman Prof'l, Inc.*, 128 Nev. 68, 72-73, 270 P.3d 1259, 1262 (2012). " 'Substantial evidence has been defined as that which a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 73, 270 P.3d at 1262 (quoting *McClanahan v. Raley's, Inc.*, 117 Nev. 921, 924, 34 P.3d 573, 576 (2001)).

Under NRS 17.245(1)(b), a defendant cannot be liable to co-defendants in a tort action for contribution or equitable indemnity if the defendant settles with the plaintiff in good faith. We have previously declined to define "good faith" under NRS 17.245(1)(b), and have left this determination "to the discretion of the trial court based upon all relevant facts available." *Velsicol Chem.*, 107 Nev. at 360, 811 P.2d at 563. But we have recognized the following factors as being relevant, though not exclusive, criteria for this determination: " '[t]he amount paid in settlement, the allocation of the settlement proceeds among plaintiffs, the insurance policy limits of settling defendants, the financial condition of settling defendants, and the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants.' " *Doctors Co. v. Vincent*, 120 Nev. 644, 651-52, 98 P.3d 681, 686

---

[5]Otak's arguments as to PCS's third-party complaint and P&R's cross-claims are now moot because the district court dismissed PCS's third-party complaint and denied P&R leave to amend its answer to add cross-claims against Otak based on this court's opinion in *Otak I*, 127 Nev. at 599, 260 P.3d at 412. *See Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010) (holding that this court will not consider issues where an actual controversy is not present throughout "all stages of the proceeding"). But, Otak's writ petition is not moot in its entirety because the issue of whether NRS 17.245 bars "de facto" claims for contribution and/or equitable indemnity is still an actual controversy between the parties due to the district court's refusal to dismiss all of the claims in P&R's third-party complaint.

(2004) (alteration in original) (quoting *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 927 (D. Nev. 1983)). In addition, the district court may consider the merits of any contribution or equitable indemnity claims against the settling defendant. *Id.* at 652, 98 P.3d at 687.

Relying on these factors, P&R argues that Otak's settlement was not in good faith because Otak paid less than its potential liability, and much less than the amounts paid by the other defendants. In *Velsicol Chemical*, however, we noted that a settlement is in good faith so long as it is not "disproportionately lower than [the settling defendant's] fair share of damages." 107 Nev. at 361, 811 P.2d at 564. Thus, a settlement for less than what the other defendants paid will generally be in good faith when the settling defendant's potential liability is minimal. *See Bay Dev. Ltd. v. Superior Court,* 791 P.2d 290, 299 (Cal. 1990) (upholding a settlement of $30,000 in a case seeking damages in excess of $1 million because there was evidence that the settling defendant "bore only minor responsibility" for the plaintiffs' injuries).

Under such an analysis, a settling defendant would not be required to pay the full amount of its potential liability, as such a requirement "would unduly discourage settlements." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 698 P.2d 159, 166 (Cal. 1985). Furthermore, because a defendant with minimal liability to the plaintiff will also have minimal liability for contribution or equitable indemnity to co-defendants, permitting a smaller settlement does not prejudice the nonsettling defendants. *Cahill v. San Diego Gas & Elec. Co.*, 124 Cal. Rptr. 3d 78, 101 (Ct. App. 2011).

Here, the evidence in the record indicates that Otak's potential liability is minimal. Although P&R's expert opined that Otak breached a contractual duty owed to P&R by failing to warn P&R of the hazardous roadway condition, Otak's experts refuted that opinion in their reports by stating that Otak was not contractually required to frequent the site in order to report unsafe conditions, and that it was not customary for architects to do this. In addition, although the contract between Otak and P&R contained a clause requiring Otak to periodically visit the site, it also contained a clause stating that Otak was not responsible for "safety precautions and programs." Finally, experts opined that Otak exercised reasonable care in all of its duties and was not involved in or responsible for the road construction. Accordingly, there is substantial evidence in the record to suggest that Otak's potential liability is minimal, thus supporting the district court's finding of good faith.

P&R also argues that Otak's settlement was not in good faith because the settlement was a tactical decision designed to cut off P&R's equitable indemnity and contractual rights and was for substantially less than Otak's insurance policy limits. But "[a] settlement is not considered made in bad faith simply because its purpose is to eliminate third-party liability." *Dixon v. Nw. Publ'g Co.*, 520 N.E.2d 932, 937 (Ill. App. Ct. 1988); *see also Doctors Co.*, 120 Nev. at 652, 98 P.3d at 687 (providing that the district court may consider the strengths and weaknesses of any known contribution or equitable indemnity claims); *Vertecs Corp. v. Fiberchem, Inc.*, 669 P.2d 958, 961 (Alaska 1983) (holding that "it could hardly be correct to say that a settlement prompted by a party's wish to avoid contribution is necessarily in bad faith"). And we have declined to treat insurance policy limits as exclusive criteria in determining whether a settlement is in good faith. *See Doctors Co.*, 120 Nev. at 652, 98 P.3d at 686. Because the district court is vested "with considerable discretion" in approving good-faith settlements, *id.* at 652, 98 P.3d at 687, we conclude that the district court did not abuse its discretion in finding Otak's settlement to be in good faith given the substantial evidence in the record of Otak's minimal potential liability.[6]

*The district court erred when it declined to dismiss P&R's third-party complaint*

Otak argues that the district court erred by declining to dismiss P&R's third-party complaint in its entirety because P&R's remaining third-party claims are all "de facto" contribution and equitable indemnity claims that are barred by NRS 17.245(1)(b).[7] We

[6]P&R asserted, during oral argument, that the plaintiffs had no viable claims against Otak because the statute of limitations ran before the plaintiffs voluntarily dismissed their claims against Otak. We decline to address this issue because this argument was not articulated before the district court or in P&R's answer to Otak's writ petition. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (declining to address arguments where a party fails to cogently argue or cite to relevant authority in support of his arguments). We further decline to consider P&R's argument that the district court abused its discretion by approving the settlement when Otak allegedly concealed discovery because P&R fails to cite to any relevant authority in support of this contention. *See id.*

[7]Otak argues that the district court lacked jurisdiction to grant P&R leave to file a third-party complaint while *Otak I* was pending before this court. We do not address this issue because Otak does not provide any argument or authority in support of this assertion in its petition or reply. *See Edwards*, 122 Nev. at 330 n.38, 130 P.3d at 1288 n.38.

review the district court's legal conclusions de novo. *Buzz Stew, L.L.C. v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

### NRS 17.245(1)(b)

In the context of a writ petition, we review issues of statutory interpretation de novo. *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 198, 179 P.3d 556, 559 (2008). "It is well established that the court must interpret statutes consistent with the intent of the legislature." *Steward v. Steward*, 111 Nev. 295, 302, 890 P.2d 777, 781 (1995). NRS 17.245(1)(b) provides that a good-faith settling defendant cannot be liable "for contribution and for equitable indemnity to any other" nonsettling defendant. It does not state whether "contribution" or "equitable indemnity" only include *claims* titled as such, or whether NRS 17.245(1)(b)'s bar encompasses all theories of recovery that seek contribution or equitable indemnity, regardless of the claim's actual title.

According to the Uniform Contribution Act Among Tortfeasors, the purpose for barring contribution claims against a settling defendant is to permit plaintiffs to sever a joint tortfeasor from the case without needing to first reach a global settlement with all of the defendants. *See* Unif. Contribution Among Tortfeasors Act § 4, 12 U.L.A. 284-85 cmt. b (2008). When originally enacted, NRS 17.245 barred a nonsettling defendant from seeking contribution from a settling defendant, but still permitted claims for equitable indemnity. *See* Hearing on A.B. 421 Before the Assembly Comm. on Judiciary, 69th Leg. (Nev., May 21, 1997). In 1997, the Legislature amended NRS 17.245 to also bar equitable indemnity in order to address the fact that a settling defendant was not completely released from a case so long as potential claims for indemnity still existed. *See* Hearing on A.B. 421 Before the Senate Comm. on Judiciary, 69th Leg. (Nev., June 6, 1997). The legislative amendment included equitable indemnity in order "to eliminate that defense and promote and encourage settlements among joint defendants." *Id.* We conclude that allowing a nonsettling defendant to seek contribution or equitable indemnity damages under the guise of a differently named cause of action would defeat the legislative intent behind NRS 17.245—to promote and encourage settlements among joint defendants.

Our conclusion is consistent with the approach taken by other jurisdictions. *See Cal-Jones Props. v. Evans Pac. Corp.*, 264 Cal. Rptr. 737, 739 (Ct. App. 1989) (holding that claims between tortfeasors are for indemnity regardless of the language used if the claims are identical to those made by the plaintiff or if the damages sought are those that the court would consider in determining the

proportionate liability of the tortfeasors); *Herington v. J.S. Alberici Constr. Co.*, 639 N.E.2d 907, 911 (Ill. App. Ct. 1994) (dismissing a claim for "partial indemnity" because the court concluded that it was really a claim for contribution); *Westchester Cnty. v. Welton Becket Assocs.*, 478 N.Y.S.2d 305, 314-15 (App. Div. 1984) (dismissing a claim for indemnity because the claim was actually one for contribution); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1067 (Wash. 1993) (dismissing claim that was "simply an indirect attempt to obtain contribution"); *Grant Thornton, L.L.P. v. Kutak Rock, L.L.P.*, 719 S.E.2d 394, 405 (W. Va. 2011) (dismissing claims that essentially sought contribution). These jurisdictions looked to the claim's substance, rather than its label, to determine whether the claim is barred by their good-faith settlement statute. *See Gackstetter v. Frawley*, 38 Cal. Rptr. 3d 333, 344 (Ct. App. 2006) (holding that "claims for indemnification can include other claims not labeled as indemnity claims, but that in reality are 'disguised' indemnity claims"); *Herington*, 639 N.E.2d at 911 (holding that "[t]he legal effect to be given an instrument is not determined by the label it bears or the technical terms it contains").

Likewise, this court has consistently analyzed a claim according to its substance, rather than its label. *See Rolf Jensen & Assocs. v. Eighth Judicial Dist. Court*, 128 Nev. 441, 453, 282 P.3d 743, 751 (2012) (analyzing claims for breach of contract, breach of warranty, and negligent misrepresentation, and concluding that these claims were preempted by the American Disability Act because they were "de facto claims for indemnification"); *Alsenz v. Clark Cnty. Sch. Dist.*, 109 Nev. 1062, 1066, 864 P.2d 285, 288 (1993) (holding that a personal injury claim asserted by a decedent's estate was actually for wrongful death "[r]egardless of the cause of action's legal name"). This approach is persuasive, and we now hold that once a trial court determines that a defendant has settled in good faith, NRS 17.245(1)(b) bars all claims against the settling defendant that in effect seek contribution and equitable indemnity, regardless of the claim's title.

To determine if a claim in effect seeks contribution or equitable indemnity in contravention of NRS 17.245(1)(b), trial courts should consider whether (1) the claim arose from the same basis on which the settling defendant would be liable to the plaintiff, and (2) the claim seeks damages comparable to those recoverable in contribution or indemnity actions. *See Cal-Jones Props.*, 264 Cal. Rptr. at 739; *Grant Thornton*, 719 S.E.2d at 405. We used a similar test to determine whether state-law claims were preempted by the 1990 Americans with Disabilities Act's bar against claims seeking indemnity. *See Rolf Jensen*, 128 Nev. at 453, 282 P.3d at 751. In *Rolf Jensen*, we concluded that Mandalay Corporation's

claims for breach of contract, breach of warranty, and negligent misrepresentation against its construction consultant were de facto indemnity claims because the ''claims and requested damages derive[d] solely from [the claimant's] first-party liability.'' *Id.* We now take this opportunity to extend the application of the *Rolf Jensen* test to a determination of whether a claim in effect seeks contribution or equitable indemnity in contravention of NRS 17.245(1)(b).

### *P&R's remaining claims seek contribution*

With this test in mind, we examine whether NRS 17.245(1)(b) bars P&R's remaining third-party claims for express indemnity, contribution, breach of contract, breach of the covenant of good faith and fair dealing, and punitive damages.

First, Otak argues that P&R has no claim for express indemnity because the indemnity clause is actually a contribution clause, recovery under which is barred by NRS 17.245(1)(b).[8] A review of the clause at issue shows that Otak's argument is correct. Contribution ''is an equitable sharing of liability,'' whereas indemnity ''is a complete shifting of liability to the party primarily responsible.'' *Medallion Dev., Inc. v. Converse Consultants*, 113 Nev. 27, 32, 930 P.2d 115, 119 (1997), *superseded by statute on other grounds as stated in Doctors Co.*, 120 Nev. at 654, 98 P.3d at 688; NRS 17.245. The contractual provision at issue here states that:

> [Orion] shall indemnify, hold harmless, and defend [Otak], [Cheyenne] and its respective representatives, officers, directors, and employees from any loss or claim made by third parties including legal fees and costs of defending actions or suits, resulting directly or indirectly from [Orion's] performance or nonperformance of this Agreement, where the loss or claim is attributable to the negligence or other fault of [Orion], its employees, representatives, or its subcontractors. If the loss or claim is caused by the joint or concurrent negligence or other fault of [Otak] and [Orion], the loss or claim

[8]We reject Otak's argument that P&R is not a third-party beneficiary entitled to enforce the indemnity clause in the contract between Otak and Orion because Cheyenne is clearly an intended third-party beneficiary, and P&R is raising this argument on behalf of Cheyenne. *See Canfora v. Coast Hotels & Casinos, Inc.*, 121 Nev. 771, 779, 121 P.3d 599, 605 (2005) (''Whether an individual is an intended third-party beneficiary, however, depends on the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered.'' (internal quotations omitted)). Furthermore, contrary to Otak's assertion, P&R raised Cheyenne's third-party beneficiary status below when it alleged that Otak breached the indemnity provision ''covering Cheyenne'' in its third-party complaint.

shall be borne by each in proportion to the degree of negligence or other fault attributable to each.

The only part of the provision attributing liability to Otak is the last sentence of the clause, which apportions liability according to fault rather than shifting liability to the primarily responsible party, making the contractual clause one for contribution rather than indemnity.[9] Because NRS 17.245(1)(b) bars *all* contribution claims, P&R's cause of action titled as a claim for express indemnity should have been dismissed.[10]

Second, as to P&R's express contribution claim, although NRS 17.245 distinguishes between equitable indemnity and contractual (or express) indemnity, *see* NRS 17.245(2), it does not distinguish between equitable and contractual contribution. *See* NRS 17.245(1)(b). The Legislature could have chosen to make this distinction when it amended NRS 17.245 in 1997 and distinguish between equitable and contractual indemnity claims. Thus, it appears that the Legislature intended for NRS 17.245(1)(b) to bar *all* contribution claims regardless of whether contribution is equitable (implied) or contractual (express). Other jurisdictions have similarly reasoned that allowing a contractual-contribution claim when a common-law or statutory-contribution claim is barred by a good-faith settlement statute, contravenes public policy considerations encouraging settlement. *See Herington*, 639 N.E.2d at 911; *Pierre Condo. Ass'n v. Lincoln Park West Assocs.*, 881 N.E.2d 588, 596 (Ill. App. Ct. 2007). Therefore, we conclude that P&R's express contribution claim is also barred by NRS 17.245(1)(b).

Finally, P&R argues that its claims for breach of contract and breach of the covenant of good faith and fair dealings are not

---

[9]Even if the contractual provision at issue could be read as an indemnity clause, it would not require Otak to indemnify P&R. Indemnity clauses must be strictly construed. *Reyburn Lawn & Landscape Designers, Inc. v. Plaster Dev. Co.*, 127 Nev. 331, 340, 255 P.3d 268, 274 (2011). Because the clause does not specifically state that Otak is required to indemnify Cheyenne, the clause only requires indemnification from Orion. *See id.* at 340-41, 255 P.3d at 275 (interpreting an indemnity clause to only cover the negligence of the indemnitor because the clause did not explicitly state that the indemnitor had a duty to indemnify absent negligence on its part); *George L. Brown Ins. Agency, Inc. v. Star Ins. Co.*, 126 Nev. 316, 325, 237 P.3d 92, 97 (2010) (stating that "indemnification 'provisions are strictly construed and will not be held to provide indemnification unless it is so stated in clear and unequivocal terms'" (quoting *GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548, 552 (Ind. Ct. App. 2003))).

[10]Because we conclude that the contractual provision at issue in P&R's express indemnity claim is a contribution clause, we do not reach the issue of whether NRS 17.245(1)(b) bars claims for contractual indemnity.

barred by NRS 17.245(1)(b) because these claims are based on Otak's alleged breach of the contract between Otak and P&R. The allegedly breached provision, however, required Otak to periodically inspect the construction site and report deficiencies to P&R. But this breach is one of the reasons that the plaintiffs allege the accident occurred in the first place, and is thus not independent of P&R's liability to the plaintiffs. Furthermore, P&R seeks to recover the damages it has suffered from defending itself in the lawsuit and settling with the plaintiffs "for injuries and damages allegedly caused by roadway conditions arising directly from OTAK's various breaches of contract." Notably, P&R does not seek any damages that are unrelated to the plaintiffs' accident, nor does P&R allege that Otak breached a duty that resulted in liability to P&R on a basis other than that Otak was potentially responsible for the plaintiffs' accident. We therefore conclude that P&R's claims for breach of contract and breach of the covenant of good faith and fair dealing are barred by NRS 17.245(1)(b) because these claims seek contribution.

As no causes of action remain on which to base an award of damages, we conclude that P&R's punitive damages claim must also be dismissed.[11]

For the reasons discussed above, we grant the petition and direct the clerk of this court to issue a writ of mandamus directing the district court to dismiss P&R's remaining third-party claims against petitioner Otak Nevada, LLC.

PICKERING, C.J., and GIBBONS, PARRAGUIRRE, DOUGLAS, CHERRY, and SAITTA, JJ., concur.

---

[11]Otak argues that the district court's ruling violated Otak's equal protection rights under the United States and Nevada Constitutions because the district court's decision was opposite to a decision entered by a different district court judge in a similar case. Although parties are guaranteed equal and uniform application of the law, U.S. Const. amend. XIV, § 1; Nev. Const. art. 4, § 21, the United States Supreme Court has rejected the contention that inconsistent judicial rulings from lower courts are grounds for equal protection challenges. See Milwaukee Elec. Ry. & Light Co. v. Wisconsin, 252 U.S. 100, 106 (1920) (holding that "the Fourteenth Amendment does not, in guaranteeing equal protection of the laws, assure uniformity of judicial decisions"). Therefore, we reject Otak's argument. See Barrett v. Baird, 111 Nev. 1496, 1509, 908 P.2d 689, 698 (1995) (holding that this court applies the same standards to equal protection challenges as the federal courts), overruled on other grounds by Lioce v. Cohen, 124 Nev. 1, 17, 174 P.3d 970, 980 (2008).